IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED NATIONAL INSURANCE
COMPANY A/S/O COUNCIL OF
UNIT OWNERS PELICAN
BEACH CONDOMINIUM,

    Plaintiff,

v.

PENINSULA ROOFING COMPANY,
INC.,[1]

    Defendant.

:   Civil Action No. GLR-16-3548

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Peninsula Roofing Company, Inc.'s ("Peninsula") Motion for Summary Judgment (ECF No. 12). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

### I.     BACKGROUND[2]

Pelican Beach Condominium Association ("Pelican Beach"), Plaintiff United National Insurance Company's ("United National") insured, entered into a contract (the "Contract") with Peninsula to replace the roof on its condominium building located at

---

[1] Peninsula's full name is "Peninsula Roofing Company, Inc." (See Def.'s Mot. Summ. J. at 1, ECF No. 12). Accordingly, the Court will direct the Clerk to amend Peninsula's name on the docket.

[2] Unless otherwise noted, the facts outlined here are set forth in United National's Complaint (ECF No. 1). To the extent the Court discusses facts that United National does not allege in its Complaint, they are uncontroverted and the Court views them in the light most favorable to United National. The Court will address additional facts when discussing applicable law.

13908 Wight Street, Ocean City, Maryland (the "Work").[3]  (Compl. ¶ 4, ECF No. 1). The Contract consists, in relevant part, of two boilerplate American Institute of Architects ("AIA") documents: Document A101™–2007 "Standard Form Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum" ("A101"), (Def.'s Mem. Supp. Mot. Summ. J. ["Def.'s Mot."] Ex. 5 ["A101"], ECF No. 12-5); and Document A201™–2007 "General Conditions of the Contract for Construction" ("A201"), (Def.'s Mot. Ex. 6 ["A201"], ECF No. 12-6).

The Contract contains four provisions relevant to this case. First, the "Waivers of Subrogation" provision (the "Waiver"), A201 § 11.3.7 provides, in pertinent part: "The Owner and Contractor waive all rights against [ ] each other . . . for damages caused by fire . . . to the extent covered by property insurance obtained pursuant to Paragraph 11.3 or other property insurance applicable to the Work . . . ."  (A201 § 11.3.7).[4]  Second, A201 § 11.3.1 provides, in relevant part, that "the Owner shall purchase and maintain . . . property insurance written on a builder's risk 'all-risk' or equivalent policy form."  (Id. § 11.3.1).  Third, § 11.3.1.1 further provides that "[p]roperty insurance shall be on 'all risk' or equivalent policy form and shall include, without limitation, insurance against the perils of fire."  (Id. § 11.3.1.1).  Finally, § 11.3.5 states: "If during the Project

---

[3] The Contract defines "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations."  (A201 § 1.1.3).
[4] Section 11.3.7 also states: "The policies shall provide such waivers of subrogation by endorsement or otherwise."  (A201 § 11.3.7).  Pelican Beach's insurance policy with United National did not include a waiver of subrogation endorsement. (Joint Stip. of Facts ¶ 6, ECF No. 12-8).

construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project . . . , the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance." (Id. § 11.3.5).

Prior to and during construction, Pelican Beach maintained a commercial property insurance policy through United National. (Joint Stip. of Facts ¶ 5). Pelican Beach did not obtain a freestanding builder's risk or all-risk policy. (See id.).

Around September 8, 2015, Peninsula began replacing the roof at Pelican Beach. (Compl. ¶ 7). On January 13, 2016, while Peninsula was working on the roof, a fire broke out in the back of a Peninsula truck that was parked in a parking structure underneath the condominium. (Joint Stip. of Facts ¶¶ 1–4). The source of the fire was a generator located in the back of the truck that supplied electricity to the tools Peninsula was using on the roof. (Id. ¶¶ 3–4). The fire caused more than $3,000,000.00 in property damage, which United National either "paid, or expects to pay." (Id. ¶ 7).

On October 25, 2016, United National, as Pelican Beach's subrogee, sued Peninsula. (ECF No. 1). The two-count Complaint alleges negligence and breach of contract. (Compl. ¶¶ 20–37). United National seeks to recover the approximately $3,000,000.00 in fire damages. (Id. at 5, 7). On April 24, 2017, Peninsula filed a Motion for Summary Judgment. (ECF No. 12). On June 26, 2017, United National filed an Opposition. (ECF No. 19). Peninsula filed a Reply on July 13, 2017. (ECF No. 20).

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.** **Analysis**

Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." John L. Mattingly Constr. Co. v. Hartford Underwriters Ins. Co., 999 A.2d 1066, 1069 (Md. 2010) (quoting Black's Law Dictionary 1563–64 (9th ed. 2009)).[5] An insurer bringing suit as subrogee is typically viewed as "standing in the

---

[5] Because this case arises under the Court's diversity jurisdiction the Court will apply federal procedural law and state substantive law. See Hartford Fire Ins. Co. v.

5

shoes" of the insured. Id. (quoting Robert E. Keeton & Alan I. Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices § 3.10, at 219 (student ed. 1988)). In other words, "the insurer's rights are equal to, but no greater than, those of the insured." Id. (citing Keeton & Widiss, supra). As a result, if "an insured has entered into a contract which is intended to substitute insurance for personal liability, the insurer is bound by such agreement and may not sue the third party under a theory of subrogation." Gen. Cigar Co. v. Lancaster Leaf Tobacco Co., 323 F.Supp. 931, 942 (D.Md. 1971).

Construction contracts often contain "waiver[ ] of subrogation" provisions. Mattingly, 999 A.2d at 1069–70 (quoting Hartford Underwriters Ins. Co. v. Phoebus, 979 A.2d 299, 304–05 (Md.Ct.Spec.App. 2009)). Such provisions "require the parties to waive their right to claim damages against one another up to the amount of insurance coverage available for their losses." Phoebus, 979 A.2d at 304, aff'd sub nom. Mattingly, 999 A.2d 1066 (quoting 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 11:100, at 306 (2002)). The purpose of a waiver of subrogation is to "provide certainty and eliminate litigation by having the contracting parties look only to the owner's insurance for protection in the event of loss resulting from fire or other perils." Id. (quoting TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc., 233 S.W.3d 562, 567–68 (Tex.App.2007)). Put another way, a waiver of

---

Harleysville Mut. Ins. Co., 736 F.3d 255, 261 n.3 (4th Cir. 2013). The parties do not dispute that they executed the Contract in Maryland and they cite to Maryland law in their briefs. Accordingly, the Court applies Maryland law.

6

subrogation "substitutes the protection of insurance for the uncertain and expensive protection of liability litigation." Id. (quoting TX. C.C., 233 S.W.3d at 567–68).

Peninsula contends that United National, as subrogee, may only pursue claims that Pelican Beach could pursue. Because Pelican Beach waived all rights it had against Peninsula for fire damages to the extent covered by property insurance under the Waiver, United National cannot bring the claims against Peninsula in the present suit.

United National argues that the Waiver does not apply for three principal reasons.[6] First, United National asserts that the Waiver only applies to a builder's risk policy or its

---

[6] United National advances two additional arguments that the Court should not enforce the Waiver. First, because the contract contains mutually beneficial promises and Peninsula's conduct materially breached the Contract, Peninsula cannot benefit from the Waiver's protections. Second, § 5-401 of the Courts and Judicial Proceedings Article, Maryland Code Annotated, voids indemnification clauses in construction contracts if the damages were caused by "the sole negligence of the promisee or indemnitee," Md. Code Ann., Cts. & Jud. Proc. ["CJP"] § 5-401 (West 2018), and therefore the Court should void the Waiver if Peninsula's sole negligence is proven. The Court finds these arguments unpersuasive.

In support of its first argument, United National cites K & G Constr. Co. v. Harris, 164 A.2d 451 (Md. 1960), in which the Court of Appeals of Maryland declined to require an owner/contractor to make a progress payment to a subcontractor after the subcontractor had damaged a wall during the course of construction. Id. at 455. The subcontractor's promise to perform in "a workmanlike manner" was "by the explicit wording of the contract, precedent to the promise of payment, monthly, by the contractor." Id. at 455–56. Here, the Waiver is not a condition precedent. Rather, both parties agreed to waive all rights against each other for damages caused by fire to the extent covered by property insurance. (A201 § 11.3.7).

Next, by its plain language, CJP § 5-401 applies only to indemnification agreements. CJP § 5-401. A subrogation waiver does not indemnify the promisee. Instead, it "shifts the risk of loss to the insurance company regardless of which party is at fault." Colonial Props. Realty Ltd. P'ship v. Lowder Constr. Co., 567 S.E.2d 389, 393 (Ga.Ct.App. 2002) (quoting Glazer v. Crescent Wallcoverings, Inc., 451 S.E.2d 509, 511 (Ga.Ct.App. 1994)). Further, United National concedes that it can find no Maryland case voiding a waiver of subrogation under CJP § 5-401 as contrary to public policy and neither can the Court. The Court, therefore, finds these arguments unpersuasive.

7

equivalent, and not its policy with Pelican Beach. Second, United National contends that the Waiver only applies to "Work," i.e., the roof, and not the "non-Work" areas that were damaged by the fire. Third, United National asserts that the Court should not enforce the Waiver because of Peninsula's alleged gross negligence. The Court agrees with Peninsula that the Waiver bars United National's claims. The Court addresses United National's arguments in turn.

1. **Property Insurance Applicable to the "Work"**

United National maintains that the Waiver only bars damage claims to the extent covered by a freestanding builder's risk or all-risk policy purchased to cover the construction project. Because Pelican Beach did not purchase such a policy, United National contends, it can pursue the instant action. The Court disagrees.

"The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." Ford v. Antwerpen Motorcars Ltd., 117 A.3d 21, 25 (Md. 2015) (quoting Curtis G. Testerman Co. v. Buck, 667 A.2d 649, 654 (Md. 1995)). Maryland follows the law of objective interpretation of contracts, which gives plain meaning to the unambiguous language of the agreement. DIRECTV, Inc. v. Mattingly, 829 A.2d 626, 632 (Md. 2003). This type of interpretation considers "what a reasonably prudent person in the same position would have understood as to the meaning of the agreement." Cochran v. Norkunas, 919 A.2d 700, 709 (Md. 2007) (citing Walton v. Mariner Health, 894 A.2d 584, 594 (Md. 2006)).

8

Here, Peninsula and Pelican Beach agreed to "waive all rights against [ ] each other . . . for damages caused by fire . . . to the extent covered by property insurance obtained pursuant to Paragraph 11.3 or other property insurance applicable to the Work." (A201 § 11.3.7). In support of its argument, United National points to the language requiring that the property insurance "be obtained pursuant to Paragraph 11.3." United National overlooks, however, that the term also applies to "other property insurance applicable to the Work." By the Waiver's plain language, then, Peninsula and Pelican Beach unambiguously agreed not to pursue litigation for "damages caused by fire," like the fire that damaged the condominiums, as long as the damages were covered by property insurance applicable to the "Work." The Court reads this provision to mean that the Waiver applies as long as an insurance policy "applicable to the Work" pays for the damage.[7] United National avers that it covered or will cover the fire damage to the Property; United National does not dispute that the insurance policy covered damages to the roof (the "Work"). Pelican Beach's insurance policy through United National, therefore, is "applicable to the 'Work.'"

Further, § 11.3.5 states that "[i]f during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project . . . , the Owner <u>shall waive all</u>

---

[7] This interpretation is in accord with other jurisdictions. See Lloyd's Underwriters v. Craig & Rush, Inc., 32 Cal.Rptr.2d 144, 146 (Cal.Ct.App. 1994) (concluding that "so long as a policy of insurance 'applicable to the Work' pays for the damage, the waiver applies"); Lexington Ins. Co. v. Entrex Commc'n Servs., Inc., 749 N.W.2d 124, 135 (Neb. 2008) (holding that "the scope of waived claims is delimited by the source of any insurance proceeds paying for the loss (i.e., whether the loss was paid by a policy 'applicable to the Work')").

9

rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance." (A201 § 11.3.5) (emphasis added). Section 11.3.5, therefore, makes § 11.3.7's Waiver applicable to fire damages covered by separate property insurance, like Pelican Beach's policy with United National. See Haemonetics Corp. v. Brophy & Phillips Co.,Inc. 501 N.E.2d 524, 526 (Mass.App.Ct. 1986) (holding that waiver of subrogation extended to the owner's pre-existing insurance policy); cf. Turner Constr. Co. v. BFPE Int'l, Inc., No. JKB-15-368, 2016 WL 1169938, at *16 (D.Md. Mar. 25, 2016) (concluding that waiver of subrogation applied to both the Work and non-Work property where the owner insured the construction projecting using a preexisting all-risk policy). Thus, the Court concludes that the Waiver extends to the preexisting insurance policy Pelican Beach obtained through United National.

### 2. "Work" vs. "Non-Work"

United National contends that § 11.3.7—the Waiver—only applies to "Work." As a result, because Peninsula was operating in an area it was specifically precluded from being in at the time of the fire, the Waiver does not apply. The Court is not persuaded.

In Turner Construction, this Court interpreted § 11.3.7 of the A201–2007 in the context of cases where, as here, the owner had provided insurance through a preexisting all-risk policy, as opposed to an independent builder's-risk policy. 2016 WL 1169938, at *16. The Court explained that courts have interpreted this language one of two ways. Id. A "clear majority" of courts apply what is called the "any insurance" approach. Id. This approach extends the waiver to "all damages insured by the owner's property insurance

policy, regardless of whether they represent damages to the Work or non-Work property." Id. (quoting Lexington, 749 N.W.2d at 133); id. n.34 (collecting cases). A minority of courts apply a "work/non-work distinction." Id. This approach extends the waiver "only to damaged work regardless of whether the owner's property insurance policy provides additional coverage." Id. (emphasis in original) (citing Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692, 700 (Colo. 2009) (en banc)).

The Turner Construction Court adopted the "any insurance" approach for three reasons. First, it is in accord with A201 § 11.3.5, in which "the Owner . . . waive[s] all rights in accordance with the terms of Section 11.3.7" if he or she insured properties "at or adjacent to the site" under policies separate from those covering the construction project. Id. The Court observed that the language of § 11.3.5 "shows that the contracting parties were not opposed to waiving damages to non-Work property." Id. (quoting Lexington, 749 N.W.2d at 135). Second, the Court noted that the "all insurance" approach furthers the policy aims of including subrogation waivers in construction contracts. Id. Namely, that they "eliminate[ ] the need for lawsuits," but still "protect[ ] the contracting parties from loss by bringing all property damage under the [owner's] property insurance." Id. (quoting Tokio Marine & Fire Ins. Co. v. Emp'rs Ins. of Wausau, 786 F.2d 101, 104 (2d Cir. 1986)). Finally, the Court concluded that it was more appropriate to apply the majority approach given that there was no "clear contrary signal in the Maryland case law." Id.

Here, the exact same contractual provisions—§§ 11.3.5 and 11.3.7 of the A201–2007—govern Peninsula and Pelican Beach's construction project. Pelican Beach also

11

provided insurance for the roofing project through its preexisting policy with United National rather than obtaining a freestanding builder's risk policy, like the circumstances addressed in Turner Construction. United National does not give the Court any reasons to depart from the all insurance approach, and the Court finds none. Thus, the Court concludes that the Waiver extends to all damages insured by Pelican Beach's property insurance policy with United National, whether the damage was to Work or non-Work.

### 3. Allegations of Gross Negligence

United National maintains that the Court should not enforce the Waiver due to Peninsula's alleged gross negligence. The Court disagrees for at least two reasons.

First, United National conflates waivers of subrogation and exculpatory clauses. An exculpatory clause "relieves a party from liability for harm caused by his or her own negligence." Coll. of Notre Dame of Md., Inc. v. Morabito Consultants, Inc., 752 A.2d 265, 270 (Md.Ct.Spec.App. 2000). Subrogation waivers, by contrast, "shift[ ] the ultimate risk of loss resulting from [fire and other] perils to the owner to the extent damages are covered by insurance." Mattingly, 999 A.2d at 1070 (quoting Phoebus, 979 A.2d at 305). As other courts addressing this very argument have observed, the rule that voids exculpatory clauses exists to ensure that "a party injured by another's gross negligence will be able to recover its losses." Reliance Nat'l Indem. v. Knowles Indus. Servs. Corp., 868 A.2d 220, 225 (Me. 2005) (quoting St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 317 F.Supp.2d 336, 341 (S.D.N.Y. 2004)); Lexington, 749 N.W.2d at 130 (noting that "the danger with exculpatory clauses is that a party injured by another's gross negligence will be unable to recover its losses"). With subrogation

12

waivers, however, "there is no risk that an injured party will be left uncompensated." Reliance, 868 A.2d at 225 (citing St. Paul Fire, 317 F.Supp.2d at 341). Subrogation waivers, therefore, do not implicate the same policy considerations courts employ to void exculpatory clauses.

Second, adopting United National's argument would permit plaintiffs to negate waivers of subrogation simply by alleging gross negligence. Maryland's appellate courts have recognized that waivers of subrogation in construction contracts serve in "cut down the amount of litigation that might otherwise arise due to the existence of an insured loss." Mattingly, 999 A.2d at 1070 (quoting Phoebus, 979 A.2d at 304); Phoebus, 979 A.2d at 304 (quoting TX. C.C., 233 S.W.3d at 567–68) (noting that subrogation waivers "provide certainty and eliminate litigation by having the contracting parties look only to the owner's insurance for protection in the event of loss resulting from fire or other perils"). Adopting the position that allegations of gross negligence fall outside the scope of subrogation waivers would vitiate the important policy reasons for such waivers. Thus, the Court concludes that United National's allegations of gross negligence do not render the Waiver void.

In sum, the Court concludes that there is no dispute of material fact that the Waiver of Subrogation bars United National's claims against Peninsula. Accordingly, the Court will grant Peninsula's Motion.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Peninsula's Motion for Summary Judgment (ECF No. 12). A separate order follows.

Entered this 30th day of March, 2018

/s/
George L. Russell, III
United States District Judge